Exhibit A

# CONSULTING SERVICES AGREEMENT

**THIS AGREEMENT** ("**Agreement**") is entered into as of the date of last signature below (the "**Effective Date**") set forth below, by and between Arcadian Infracom, Inc. a Delaware corporation ("**Company**") and Steven Wayne Dickerson ("**Consultant**").

**1. ENGAGEMENT.** Consultant agrees to perform the services ("**Services**") and provide any deliverables ("**Deliverables**") set forth in **Exhibit A** (the "**Statement of Services**"). Consultant shall be entitled to set his work schedule and the place where the work will be performed, subject to completing each project or Deliverable in a timely manner.

**2. COMPENSATION & TAXES.** Consultant shall be compensated as set forth in **Exhibit A**. Consultant is solely responsible for paying all taxes and withholdings, including social security and state and federal income tax with respect such compensation.

**3. OWNERSHIP.**

**3.1 Work Product.** The Deliverables, all embodiments thereof, and all other developments and discoveries relating thereto, and improvements thereon that are created, developed or conceived by either party in the course of performance under this Agreement, and all related Intellectual Property Rights (as defined below) (the "**Work Product**"), shall be the Company's exclusive property.

**3.2 Disclosure of Work Product.** Consultant agrees to disclose promptly in writing to Company all Work Product that Consultant solely or jointly conceives, makes, reduces to practice or learns in performing the Services.

**3.3 Assignment of Work Product.** Consultant hereby assigns to Company all right, title and interest in and to the Work Product and all applicable Intellectual Property Rights therein and thereto. Consultant shall, at the Company's request, perform all acts reasonably necessary to assist Company in perfecting and defending Company's ownership in the Work Product, including without limitation aiding in any application for registration and protection of Intellectual Property Rights. "**Intellectual Property Rights**" means all trade secrets, patents, copyrights, trademarks, trade names, service marks and other intellectual property rights throughout the world.

**4. REPRESENTATIONS AND WARRANTIES.** Consultant represents and warrants that: (1)

Consultant has full power and authority to enter into and perform this Agreement, without any conflict with any other agreement, commitment or obligation of Consultant; (2) all right, title and interest in and to all Work Product and any Intellectual Property Rights, as applicable, is fully assignable or licensable to Company as set forth herein; (3) neither the Work Product, the Intellectual Property Rights, nor any element thereof infringes or misappropriates the Intellectual Property Rights of any third party; (4) neither the Work Product nor any element thereof is subject to any restrictions or to any mortgages, liens, pledges, security interests, encumbrances, encroachments or licenses.

**5. TERM AND TERMINATION.**

**5.1 Term.** The term hereof runs from the Effective Date until terminated as set forth herein.

**5.2 Termination by Company.** At any time after the first anniversary of the Effective Date of this Agreement Company may terminate this Agreement for any reason upon 10 days prior written notice or immediately upon Consultant's breach of Section 3 or 5.

**5.3 Termination by Consultant.** Consultant may terminate this Agreement at any time there is no uncompleted Statement of Work in effect upon 10 days prior written notice or immediately upon Company's material breach of Section 2 hereof that is not cured within thirty (30) days from receipt of Consultant's written notice thereof.

**5.4 Return of Property.** Upon termination hereof or earlier as Company requests, Consultant will deliver to Company all Work Product (including, without limitation, all models, designs, prototypes, final products and other physical embodiments of the Work Product), and all other drawings, notes, memoranda, specifications, devices, formulas and documents, together with all copies thereof, and any other material containing or disclosing any Work Product, Deliverable or Confidential Information of Company. Sections 3 through 6 shall survive any termination of this Agreement.

6. CONFIDENTIALITY.

**6.1 Confidential Information.** "**Confidential Information**" means all confidential and proprietary knowledge, data and other information of any kind and form relating to Company, that Company discloses to Consultant or Consultant obtains hereunder. "**Confidential Information**" includes without limitation all Work Product and any other trade secret, know how, computer software (including source and object code), data, programs, instructions, technical information, business information and Company procedures. Confidential Information shall not include information that: (a) has been published or is otherwise readily available to the public other than by Consultant's breach of a confidentiality obligation; (b) Consultant rightfully receive from a third party without confidential limitations after disclosure by Company; (c) was known to Consultant prior to its first receipt from Company, or (d) was independently developed by or for Consultant without use of Confidential Information and by persons who had no access to the Confidential Information. Consultant may disclose the Confidential Information solely to the extent necessary to comply with an order of a judicial or administrative process, *provided that* Consultant promptly notifies Company and allows Company a reasonable time to oppose such disclosure.

**6.2 Restrictions.** Company does not transfer to Consultant any right, title or interest in or to any Confidential Information, or any Intellectual Property Rights therein or relating thereto. During the term of this Agreement and thereafter, Consultant agrees that it will hold in confidence and will not disclose Company's Confidential Information to anyone, except to persons who have a need to know such Confidential Information for purposes of Consultant performing his/her duties under this Agreement. Consultant will use no less than reasonable efforts to protect and preserve the confidentiality of Company's Confidential Information. Consultant will not use Confidential Information in any manner or for any purpose not expressly set forth in this Agreement.

**6.3 Return of Confidential Information.** Consultant will return to Company, or destroy, all Confidential Information of Company in Consultant's possession or control and permanently erase all electronic copies of such

Confidential Information promptly upon the written request of Company or the termination of this Agreement. At Company's request, Consultant will certify in writing that it has fully complied with its obligations under this Section 6.3.

7. NON-SOLICITATION. Consultant covenants and agrees that during the term hereof (including any renewals or extensions hereof) and for a period of one year thereafter, he shall not, either directly or indirectly, for himself/herself or in conjunction with or on behalf of any entity: (a) solicit, divert, or hire away, or attempt to solicit, divert or hire away, any person employed by the Company during this Agreement or during any other past or present relationship of Consultant with Company, whether or not such person is a full-time or temporary employee, whether or not such employment is pursuant to a written agreement and whether or not such employment is for a determined period or at will; or (b) solicit, divert or appropriate, or attempt to solicit, divert or appropriate, any customer, or actively sought prospective customer of the Company with respect to fiber routes on which Company provides services or use of fiber facilities or on which Company has proposed to a customer to provide services or use of fiber facilities.

8. GENERAL PROVISIONS.

**8.1 Relationship.** Consultant's relationship with Company is that of an independent Consultant. Nothing herein shall be construed to create a partnership, joint venture or employer-employee relationship. Consultant is not the Company's agent and is not authorized to make any representation, contract or commitment on the Company's behalf. The Company has no right to control or direct the details, manner or means by which Consultant provides Services hereunder and Consultant shall have the right to be employed by or provide consulting or other services to Persons other than Company.

**8.2 Expenses**. Consultant shall generally be responsible for his own expenses, but may be entitled to be reimbursed by Company for those reasonable and necessary business expenses incurred in connection with the performance of Services in accordance with Company's expense reimbursement policies as in effect from time to time

**8.3 No Benefits**. Consultant is not covered by or entitled to any benefits from the Company (e.g. health, dental, medical, disability, or life insurance; pension, retirement, profit sharing, savings, incentive, or bonus plans; vacation days or vacation or severance pay) by virtue of this Agreement. . Consultant, at his expense, shall be responsible for obtaining workers' compensation and any other insurance required by law or considered necessary or desirable by Consultant for the operation of his business.

**8.4 Governing Law.** This Agreement is entered under and shall be governed by Missouri laws without regard to the conflicts of law principles. Any proceeding arising relating to this Agreement must be brought in a state court in St. Louis, Missouri, and each party irrevocably submits to the jurisdiction and venue of such courts.

**8.5 Severability.** Any provision of this Agreement determined to be illegal or unenforceable will be limited or eliminated to the minimum extent necessary so that this Agreement otherwise remains in full force and effect.

**8.6 No Assignment.** This Agreement is not assignable by Consultant without the Company's prior written consent.

**8.7 Notices.** Notices made pursuant to this Agreement shall be in writing, delivered by personal delivery, electronic mail, facsimile transmission or by certified or registered mail, return receipt requested, and shall be deemed given upon personal delivery, five (5) days after deposit in the mail, or upon acknowledgment of receipt of facsimile transmission or electronic mail. Notices shall be sent to the addresses set forth below the signatures of the parties on this Agreement or such other address as either party may specify in writing.

**8.8 Waiver.** No waiver by a party of any breach of this Agreement by the other party shall be a waiver of any preceding or succeeding breach. No waiver by a party of any right under this Agreement shall be construed as a waiver of any other right.

**8.9 Equitable Remedy**. Both the Company and Consultant acknowledge that damages at law will not be adequate to compensate the Company for a breach or threatened or anticipatory breach of this Agreement by Consultant. The Company, in addition to the legal remedies available, shall be entitled to any and all equitable remedies, including without limitation injunctive relief to prevent a breach or threatened or anticipatory breach by Consultant of any provision of this Agreement.

**8.10    Entire    Agreement.** This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all previous agreements among the parties, written and oral, in respect of the subject matter hereof. No changes or modifications or waivers to this Agreement will be effective unless in writing and signed by both parties.

**8.11    Counterparts**. This Agreement (including facsimile or electronic copies hereof) may be signed as counterpart originals.

3

By signatures of their duly authorized representatives, the parties hereby agree to be bound by the terms of this Agreement:

FOR COMPANY:

ARCADIAN INFRACOM, INC.

By:     Dan Davis

Title:   CEO
Date:   7/21/19

CONSULTANT:

Steven W. Dickerson

Date:   7/21/2019

Address: 2150 10th Avenue West #53
            Seattle WA 98119

[Signature Page for Consulting Services Agreement]

4

EXHIBIT A

**STATEMENT OF WORK**
**CONSULTING SERVICES**

A.   DESCRIPTION OF SERVICES AND DELIVERABLES

From time to time, Consultant shall make himself or herself available to the Company to consult regarding sales of dark fiber, lit services and other telecommunications solution services for all Company customers as determined by the Company. Services and Deliverables shall include, but are not limited to the following:

- Telephonic and in person meetings with customers

- Working together with all other company engineering, finance, executive and other personnel to prepare and deliver written and oral proposals for the sale of Company products and services

- Attending all negotiation sessions for any proposals and contracts related to assigned customer accounts

- Any other duties, activities and responsibilities to achieve sales of Company products and services, as reasonably assigned to Consultant by the Company

B.   COMPENSATION

In return for the Services and Deliverables hereunder, Consultant will be granted an option to purchase 9,667 shares of Common Stock of the Company, with 25% vesting on the one year anniversary of the Effective Date of this Agreement and the remaining 75% vesting monthly over the following 36 months (the "Options"), issued under the Arcadian Infracom, Inc. 2019 Equity Incentive Plan, pursuant to a Notice of Option Award with a vesting commencement date as of the Effective Date of this Consulting Agreement.

If the Company adopts a Company sales compensation plan (which may include a base salary plus variable compensation linked to the level of Company product and service sales achieved by Consultant) which is applicable to Consultant in the future, then the Company covenants that the variable compensation portion of that plan will apply to sales of Company products and services made by Consultant during the term of this Consulting Agreement, provided, however, that any such variable compensation due to Consultant under that plan will not be paid to Consultant until after the closing of the Company's contemplated Series B financing round that will fund construction of the Company's initial long haul fiber route(s). Notwithstanding the foregoing expression of present intent, the Company can provide no assurance to Consultant that such a financing round will be initiated and/or be successful.

A-1